UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KLEIN GRIFFITH PROPERTIES GROUP, LLC,<br><br>                    Plaintiff,<br><br>     v.<br><br>WASHINGTON STATE DEPARTMENT OF COMMERCE, HANFORD AREA ECONOMIC INVESTMENT FUND, HANFORD AREA ECONOMIC INVESTMENT FUND ADVISORY COMMITTEE, CLIFTONLARSONALLEN LLP, JOLARR MANAGEMENT CONSULTING, LLC,<br><br>                    Defendants. | No.  3:22-cv-05710-BJR<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CLIFTONLARSONALLEN LLP'S AND JOLARR MANAGEMENT CONSULTING, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT |

## I.     **INTRODUCTION**

Plaintiff Klein Griffith Properties Group, LLC ("Klein Griffith" or "Plaintiff") brought this lawsuit against Defendants Washington State Department of Commerce, Hanford Area Economic Investment Fund, Hanford Area Economic Investment Fund Advisory Committee, CliftonLarsonAllen LLP ("CLA"), and JoLarr Management Consulting, LLC ("JoLarr," together with CLA, "Defendants"), asserting various claims arising from the denial of a loan application Plaintiff had submitted for a real estate development project.  Presently before the Court are

ORDER - 1

Defendants CLA's and JoLarr's motions to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 9 ("CLA Mot."); Dkt. 13 ("JoLarr Mot."). Having reviewed the pleadings, the record of the case, and the relevant legal authorities, the Court GRANTS in part and DENIES in part the motions. The Court's reasoning is set forth below.

## II.   BACKGROUND[1]

### A.   Factual Background

This case centers on a loan application that Klein Griffith, a real estate investment and development company, submitted to the Hanford Area Economic Investment Fund Advisory Committee ("HAEIFAC" or the "Committee") for purposes of funding a commercial and residential project called "The Nineteen" in Kennewick, Washington. Compl. ¶ 1. HAEIFAC, which operates under the control of Washington's Department of Commerce, is an eleven-member committee that administers the Hanford Area Economic Investment Fund ("HAEIF"), which in turn provides funding for private and public projects in Benton and Franklin Counties. *Id*. ¶¶ 2-4. In April 2017, HAEIFAC entered into a consulting agreement with CliftonLarsonAllen LLP, pursuant to which CLA would, among other things, process and advise on loan applications and serve as a liaison between the Committee and prospective borrowers. *Id.* ¶¶ 5, 10; Declaration of Callie Castillo ("Castillo Decl.," Dkt. 10), Ex. 1 at 24-27. HAEIFAC also entered into a consulting agreement with JoLarr Management Consulting, LLC in October 2017, pursuant to which JoLarr would, among other things, act as a liaison between HAEIFAC and prospective borrowers, coordinate Committee meetings, and prepare and post the required notices to those meetings. Compl. ¶¶ 6, 11; Declaration of Joel Comfort ("Comfort Decl.," Dkt. 14), Ex. 1 at 2-4.

---

[1] The facts recited below are taken from Plaintiff's Complaint ("Compl.," Dkt. 1-1). For the purposes of the present motions, the Court takes the factual allegations in the Complaint as true.

ORDER - 2

In February 2020, Klein Griffith submitted to HAEIFAC a loan application for purposes of developing The Nineteen on real property (the "Property") Klein Griffith owned in downtown Kennewick. Compl. ¶¶ 14-15. Over the next year, Klein Griffith secured $9,700,000 in funding for the project from ICON Realty Capital ("ICON"), which conditioned that loan on Klein Griffith refraining from pledging the Property as collateral for any additional loan it might receive (*e.g.*, from HAEIFAC) for The Nineteen. *Id.* ¶ 16. In March 2021, Plaintiff submitted to CLA and JoLarr an updated loan application packet disclosing the terms of ICON's loan, and certain private equity holdings that Klein Griffith was pledging as collateral for any loan extended by HAEIFAC. *Id.* ¶¶ 18-21. Plaintiff alleges that, based on that information, HAEIFAC's Loan Review Subcommittee (the "Subcommittee") recommended that Klein Griffith be extended a loan, and then, in April 2021, the Committee voted to approve a loan in the amount of $1,100,000. *Id.* ¶¶ 23-24, 28-30.

Notwithstanding the Committee's approval, Klein Griffith's loan application began to face headwinds shortly thereafter. CLA raised questions about the sufficiency of the pledged loan collateral, and eventually sent to Klein Griffith, in June 2021, loan documents that designated the Property as collateral instead of Klein Griffith's private equity holdings. Compl. ¶¶ 37-41. In subsequent months, the Committee appointed three new members who, Plaintiff alleges, had undisclosed conflicts of interest that caused them to oppose the loan. *Id.* ¶ 50. The loan application began to unravel when, during a Committee meeting held in September 2021, the Committee's chair allegedly misstated that HAEIFAC's prior approval had not been based on the use of private equity holdings to secure the loan, leading the Committee to hold a vote disallowing the use of that

ORDER - 3

collateral.[2]  *Id.* ¶¶ 54-59.  Klein Griffith's loan application was consequently referred back to the Subcommittee, and during a meeting held in early October, the Subcommittee recommended that the loan be reduced to $345,000 and placed on the agenda for the next Committee meeting scheduled for October 25.  *Id.* ¶¶ 65, 68.

The loan application saw its demise soon after Plaintiff informed CLA and JoLarr, on October 14, that it had managed to obtain ICON's consent to use the Property to secure the loan, thereby resolving the collateral issue.  Compl. ¶ 69.  In spite of that development, JoLarr notified CLA and the Committee immediately thereafter that a special meeting would be held on October 20 (the "Special Meeting") to vote on decommitting the funds.  *Id.* ¶ 71.  In the subsequent days, CLA and JoLarr corresponded with the chairs of the Committee and the Subcommittee concerning the newly scheduled Special Meeting, and JoLarr sent to CLA a document it had prepared reflecting JoLarr's advice against the loan.  *Id.* ¶¶ 73-74.  When the Special Meeting finally took place, the Committee's chair refused to permit any discussion on the issue of loan collateral before calling a vote on whether to decommit the loan.  *Id.* ¶¶ 79-82.  Ultimately, the Committee voted to decommit.  *Id.* ¶ 83.  Plaintiff claims that the Special meeting was improperly organized and violated HAEIFAC's bylaws because, among other things, Klein Griffith and other Committee members had not been given adequate notice of the meeting[3] and the vote to decommit the funds was not listed on the public agenda.  *Id.* ¶¶ 75-82.

B.  **Procedural Background**

Plaintiff filed this lawsuit on August 19, 2022, asserting various contract-based, tort, statutory, and constitutional claims arising from HAEIFAC's decommitment of the loan.  Compl.

---

[2] Plaintiff alleges that, during this same meeting, the Committee voted to extend a $550,000 loan to a company based on a referral from a former Committee member who had business ties with that company.  Compl. ¶¶ 51, 61.

[3] While Klein Griffith attended the Special Meeting, at least five HAEIFAC members were absent.  Compl. ¶ 83.

ORDER - 4

¶¶ 106-78. Plaintiff asserts claims against CLA and JoLarr, in particular, for (1) breach of contract (*id*. ¶¶ 119-33); (2) tortious interference (*id*. ¶¶ 150-58); (3) violation of the Washington's Consumer Protection Act ("CPA"), RCW § 19.86 (Compl. ¶¶ 159-64); (4) constitutional violations under 42 U.S.C. § 1983 (*id*. ¶¶ 165-71); and (5) civil conspiracy (*id*. ¶¶ 172-78). The case was removed to this Court on September 23, 2022. Dkt. 1. On September 30, 2022, CLA and JoLarr separately filed motions to dismiss the Complaint. Plaintiff opposed the motions in a single submission (Dkt. 19 ("Opp.")), and CLA and JoLarr filed separate replies. Dkt. 20 ("CLA Rep."); Dkt. 22 ("JoLarr Rep.").

### III.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is properly granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). When considering a motion to dismiss under Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and construe such allegations in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018).

ORDER - 5

## IV. DISCUSSION

### A. Plaintiff's Claims for Breach of Contract

Plaintiff claims that CLA and JoLarr, through various actions they undertook with respect to Klein Griffith's loan application, breached their consulting agreements with HAEIFAC. Compl. ¶¶ 122-25, 130-22. While Plaintiff alleges that it was an intended third-party beneficiary to both agreements (*id.* ¶¶ 120-21; 128-29), Defendants contend that Plaintiff was not, and that Plaintiff therefore is not entitled to assert breach-of-contract claims based on those agreements. CLA Mot. at 4-6; JoLarr Mot. at 3. The Court agrees with Defendants.

"A third-party beneficiary contract exists when the contracting parties, at the time they enter into the contract, intend that the promisor will assume a direct obligation to the claimed beneficiary." *Warner v. Design & Build Homes, Inc*., 128 Wash. App. 34, 43 (Wn. Ct. App. 2005). "[T]he critical question is whether the benefits flow directly from the contract or whether they are merely incidental, indirect, or consequential." *Kim v. Moffett*, 156 Wash. App. 689, 699 (Wn. Ct. App. 2010). Generally, "a party that benefits from a government contract is presumed to be an incidental beneficiary, and that presumption may not be overcome without showing a clear intent to the contrary." *Caltex Plastics, Inc. v. Lockheed Martin Corp*., 824 F.3d 1156, 1160 (9th Cir. 2016) (citation and quotation marks omitted); *see Hook v. State of Ariz., Dep't of Corr*., 972 F.2d 1012, 1015 (9th Cir. 1992) ("third party beneficiaries of the government's rights under a contract are normally assumed to be only incidental beneficiaries and are precluded from enforcing the contract absent a clear expression of a different intent"). Ultimately, a third party who stands as only an incidental beneficiary "acquires no right to recover damages for nonperformance of the contract." *Kim*, 156 Wash. App. at 699.

The Court finds that Plaintiff was not a third-party beneficiary to either contract. As an initial matter, given that Klein Griffith had not yet engaged with CLA, JoLarr, or HAEIFAC when the consulting agreements were executed in 2017, there is no basis to claim that those agreements contemplated that Klein Griffith, specifically, would acquire enforceable contract rights. Moreover, Plaintiff points to no provision in the agreements even suggesting that the contract parties would assume direct obligations to any third party.[4] While loan applicants may have benefited from certain aspects of the organizational and advisory work that CLA and JoLarr were performing pursuant to the agreements – *i.e.*, by their furthering of HAEIFAC's application review process – the purpose of the agreements was to govern the performance of services *for HAEIFAC*. *See, e.g.*, Castillo Decl., Ex. 1 at 1 (CLA contract stating that "[t]he purpose of this contract is to: Provide Loan/Grant Consultant services to [HAEIFAC]"). As such, any benefits enjoyed by loan applicants were "merely incidental" to CLA's and JoLarr's contractual obligations to HAEIFAC. *See Kim v. Moffett*, 156 Wash. App. at 699. Accordingly, Klein Griffith was not a third-party beneficiary to the consulting agreements and obtained no rights from them. The Court therefore dismisses Plaintiff's claims for breach of contract against CLA and JoLarr.

---

[4] Plaintiff objects to the Court's consideration of Defendants' contracts with HAEIFAC, which were submitted as attachments to attorney declarations, on the ground that those contracts are hearsay. However, it is well-established that "a contract – 'a legally operative document that defines the rights and liabilities of the parties' – is not hearsay." *Forreststream Holdings Ltd. v. Shenkman*, No. 16-cv-01609, 2017 WL 1112963, at *4 (N.D. Cal. Mar. 24, 2017) (citation omitted). Plaintiff also argues that the declarant attorneys lack personal knowledge of the contracts (Opp. at 5-6), but those attorneys specifically declare, under penalty of perjury, that their knowledge of the contracts is based on their review of records relating to this case. *See* Castillo Decl. ¶ 1; Comfort Decl. ¶ 1. The Court appropriately considers the agreements given that Plaintiff premises its claims on them and does not dispute their authenticity. *See Benanav v. Healthy Paws Pet Ins., LLC*, 495 F. Supp. 3d 987, 992 (W.D. Wash. 2020) ("Under the 'incorporation by reference' doctrine, a court may review documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" (citation omitted)).

### B.      Plaintiff's Claims for Tortious Interference

Plaintiff asserts tortious interference claims against CLA and JoLarr, premised on allegations that they intentionally interfered with Klein Griffith's business relationship with HAEIFAC concerning its loan application. Compl. ¶ 154; *see* Opp. at 8-9. To prevail on a claim for tortious interference, a plaintiff must plead the following elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wash. 2d 133, 157 (Wn. Sup. Ct. 1997). Defendants contend that Plaintiff fails to establish the first and fourth elements. CLA Mot. at 6-8; JLA Mot. at 3.

#### 1.      Whether Plaintiff Establishes a Valid Business Expectancy

"A valid business expectancy includes any prospective contractual or business relationship that would be of pecuniary value." *Tori Belle Cosms. LLC v. McKnight*, No. 21-cv-0145, 2022 WL 3927069, at *6 (W.D. Wash. Aug. 31, 2022) (quoting *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 158 (Wn. Ct. App. 2002)). A plaintiff need not establish the existence of an enforceable contract to demonstrate a valid business expectancy. *CaptiveAire Sys., Inc. v. ITW Food Equip. Grp., LLC*, No. 09-cv-244, 2009 WL 10676075, at *6 (W.D. Wash. Sept. 28, 2009) (citation omitted). "Rather, all that is required is a relationship between parties contemplating a contract, with at least a reasonable expectancy of fruition." *Id.*; *see Greensun Grp., LLC v. City of Bellevue*, 7 Wash. App. 2d 754, 769 (Wn. Ct. App. 2019) ("Washington courts require a plaintiff to show only that its future business opportunities are a reasonable expectation and not merely wishful thinking." (citation and quotation marks omitted)).

ORDER - 8

Plaintiff argues that it adequately alleges a valid business expectancy with respect to the loan that HAEIFAC had contemplated extending to it for purposes of developing The Nineteen. Opp. at 7-8. The Court agrees. There is no dispute that the contemplated loan had pecuniary value to Klein Griffith. Further, as discussed above, Klein Griffith had advanced sufficiently far through HAEIFAC's loan application process to have secured the Committee's initial approval of the loan. *See id.* ¶¶ 23-27, 30. That approval plausibly provided Plaintiff with a reasonable expectation that the sought loan would eventually come to fruition. *See Woods View II, LLC v. Kitsap Cnty.*, 188 Wash. App. 1, 30 (Wn. Ct. App. 2015) (developer's relationship with prospective lender, which had made an initial loan commitment for a project, constituted a valid business expectancy). Accordingly, the Court finds that Plaintiff adequately alleges a valid business expectancy.

### 2. Whether Plaintiff Establishes an Improper Purpose or Means

As noted above, Plaintiff must also establish that Defendants "interfered for an improper purpose or used improper means." *See Leingang*, 131 Wash. 2d at 157. Interference for an "improper purpose," to start, "'is interference with an intent to harm' the plaintiff." *Zunum Aero, Inc. v. Boeing Co.*, No. 21-cv-0896, 2022 WL 3346398, at *12 (W.D. Wash. Aug. 12, 2022) (quoting 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 352.03 (7th ed.)); *see Pleas v. City of Seattle*, 112 Wash. 2d 794, 803 (Wn. Sup. Ct. 1989) (an improper purpose arises from the "pursuit of an improper objective of harming the plaintiff"). Here, Plaintiff alleges that numerous Committee members were hostile to Klein Griffith, including the Committee's chair, who repeatedly acted capriciously with respect to the loan application,[5] and three other Committee

---

[5] As noted above, Plaintiff alleges that the Committee's chair, among other things, made misrepresentations concerning Plaintiff's loan application and available collateral during Committee meetings, rushed the Committee to a vote on decommitting the loan, and disallowed Klein Griffith from explaining its ability to pledge the Property as collateral during the Special Meeting. *See, e.g.*, Compl. ¶¶ 56, 69, 73-75, 80.

ORDER - 9

members, who held undisclosed conflicts of interest. *See, e.g.*, Compl. ¶¶ 49-50. CLA and JoLarr are alleged to have represented HAEIFAC and organized its activities including, among other things, orchestrating the Special Meeting. The defects alleged by Plaintiff as to the manner in which the Special Meeting was organized and held makes it plausible that CLA's and JoLarr's actions were undertaken with the intent of harming Plaintiff in accordance with the wishes or instructions of certain Committee members. Accordingly, the Court finds that Plaintiff adequately alleges that Defendants interfered with Plaintiff's business opportunity for an improper purpose.

Interference by "improper means," in turn, "is interference that violates a statute, a regulation, a recognized rule of common law, or an established standard of the trade or profession." *Zunum Aero*, 2022 WL 3346398, at *12 (quoting 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 352.03). The Court finds that Plaintiff's allegations as to Defendants' efforts to derail HAEIFAC's prior approval of the loan and orchestrate an accelerated decommitment vote without proper notice – allegedly at the behest of, and in conspiracy with, hostile Committee members – make it plausible that Defendants, in doing so, ran afoul of a recognized rule of law or standard of trade. For example, Plaintiff specifically claims that Defendants' alleged inadequate notice of the Special Meeting effected a breach of their contractual duties to serve as liaisons – a claim that Defendants do not dispute in their motions.[6] *See, e.g.*, Compl. ¶¶ 122, 130. Accordingly, the Court finds that Plaintiff has set forth a claim that Defendants used improper means to interfere with Plaintiff's business opportunity.

---

[6] Defendants contend only that "violations of contractual obligations to [] a third party [] are not sufficient to establish improper means as a matter of law." Rep. at 6. In support of that proposition, however, Defendants cite only to a decision from a New Mexico court that held, under New Mexico law, that a breach of contract with a third party is not ordinarily sufficient to support a tortious interference claim. *See Quintana v. First Interstate Bank of Albuquerque*, 105 N.M. 784, 787 (N.M. Ct. App. 1987). The Court declines to follow that decision absent any indication that Washington law similarly precludes tortious interference claims premised on certain types of contract breaches.

Therefore, the Court declines to dismiss Plaintiff's claims for tortious interference.

**C.      Plaintiff's Claims for Violation of the Washington Consumer Protection Act**

Plaintiff claims that Defendants violated the CPA in connection with their handling of Plaintiff's loan application. Compl. ¶¶ 159-64. To prevail on a CPA claim, "the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 37 (Wn. Sup. Ct. 2009). Defendants argue that the Complaint's allegations fail to establish the third element: an effect on the public interest. CLA Mot. at 8-10; JoLarr Mot. at 3.

In determining whether an act or practice affects the public interest, Washington courts ordinarily inquire whether the plaintiff's CPA claim presents "essentially a consumer transaction" or "essentially a private dispute." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 790 (Wn. Sup. Ct. 1986). However, the Washington Supreme Court has made clear that, in certain cases, "a neat distinction between consumer and private disputes is not workable." *Nordstrom, Inc. v. Tampourlos*, 107 Wash. 2d 735, 742 (Wn. Sup. Ct. 1987) (CPA claim premised on trade name infringement satisfied public interest element given potential for public confusion). This is one such case. While Defendants' alleged practices may not have been directed to the public at large, they clearly implicate a public interest. Defendants' consulting services were provided to HAEIFAC – a governmental body, established by statute, and composed of public servants appointed by Washington's Department of Commerce, *see* RCW § 43.31.425 – for purposes of administering the disbursement of public funds for both public and private projects. *See* Compl. ¶¶ 3-4, 10. Plaintiff's allegations, if true, would demonstrate that CLA and JoLarr, through their handling of Klein Griffith's loan application, became integral participants to an effort

ORDER - 11

to subvert HAEIFAC's fair and impartial administration of a public fund established for the public's benefit. The Court finds that those allegations satisfy the public interest element. Accordingly, the Court will not dismiss Plaintiff's CPA claims.

### D. Plaintiff's Section 1983 Claims

Plaintiff asserts claims under 42 U.S.C. § 1983 premised on allegations that Defendants, through their organization of the October 20 Special Meeting, violated Klein Griffith's procedural due process rights by failing to provide it with sufficient notice of that meeting and depriving it of the opportunity to be heard. Compl. ¶ 170. Defendants contend that Plaintiff's claim fails on the ground that CLA and JoLarr are not adequately alleged to have been "state actors" subject to Section 1983 claims. CLA Mot. at 10-13; JoLarr Mot. at 3. The Court disagrees.

"Section 1983 liability extends to a private party where the private party engaged in state action under color of law and thereby deprived a plaintiff of some right, privilege, or immunity protected by the Constitution or the laws of the United States." *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1209 (9th Cir. 2002). "[A] private entity can qualify as a state actor in a few limited circumstances – including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck* 139 S. Ct. 1921, 1928 (2019) (citations omitted). The state actor requirement will be satisfied if any of these circumstances are present. *See Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1122 (9th Cir. 2022).

Plaintiff first contends that CLA and JoLarr qualify as state actors under the so-called "joint action" test by virtue of their alleged joint conduct with HAEIFAC, a governmental body. Opp. at 12-13. "The joint action test asks 'whether state officials and private parties have acted in

ORDER - 12

concert in effecting a particular deprivation of constitutional rights.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002)) (quotation marks omitted). "This requirement can be satisfied either 'by proving the existence of a conspiracy or by showing that the private party was 'a willful participant in joint action with the State or its agents.'" *Id.* (quoting *Franklin*, 312 F.3d at 445). "Ultimately, joint action exists when the state has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." *Id.* (citation and quotation marks omitted); *see Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021) ("A private entity may be considered a state actor only if its particular actions are 'inextricably intertwined' with those of the government." (citation and quotation marks omitted)).

While the Court makes no finding as to whether Plaintiff's allegations establish constitutional violations arising from the October 20 Special Meeting, the Court finds that Plaintiff adequately alleges joint action with respect to the events upon which its claims are based. The Complaint alleges, and the consulting agreements reflect, that CLA and JoLarr had served as the liaisons between HAEIFAC and Klein Griffith. *See* Compl. ¶¶ 10-11; Castillo Decl., Ex. 1 at 24-27; Comfort Decl., Ex. 1 at 2-4. A fair inference can be drawn from the allegations that CLA and JoLarr had been made solely responsible for providing notice of, and coordinating with Klein Griffith about, upcoming Committee meetings. *See, e.g.*, Compl. ¶ 67 (alleging that a HAEIFAC member missed the October 7, 2021 Subcommittee meeting because JoLarr did not respond to his email asking where it would be held); *see also Frazier v. Aramark*, No. 10-cv-0610, 2011 WL 3847188, at *2-3 (E.D. Cal. Aug. 30, 2011) (private company operating jail cafeteria was state actor because jail had "completely delegate[d] this duty to a private company" such that the company's "conduct [was] fairly attributable to the state"). Moreover, Plaintiff alleges that CLA

ORDER - 13

and JoLarr were both integral to the orchestration of the Special Meeting. As noted above, the Complaint alleges that Defendants, upon learning that Klein Griffith had obtained ICON's consent to use the Property as loan collateral, worked together and with the Committee's chair to rush the Committee into a vote on decommitting the funds before the appropriate notices to Klein Griffith and Committee members could be given. *See, e.g.*, Compl. ¶¶ 69, 71, 73-74. The Court finds that these allegations are sufficient to establish that CLA's and JoLarr's conduct was "inextricably intertwined" with HAEIFAC's conduct with respect to the provision of notice to, and organization of, the Special Meeting. *See Pasadena Republican Club*, 985 F.3d at 1167. As such, CLA and JoLarr may be deemed "joint participants" in the events upon which the alleged constitutional violations are based, and therefore qualify as state actors under the joint actor test.[7]

Accordingly, the Court declines to dismiss Plaintiff's Section 1983 claim.

### E.   Plaintiff's Claims for Civil Conspiracy

Plaintiff asserts civil conspiracy claims premised on allegations that CLA and JoLarr, together with the other defendants in this case, conspired to decommit the loan without providing Klein Griffith the appropriate notice and opportunity to be heard concerning that decision. Compl. ¶¶ 172-78. To establish a civil conspiracy, the plaintiff "must prove by clear, cogent and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy." *Wilson v. State*, 84 Wash. App. 332, 350-51 (Wn. Sup. Ct. 1996). The alleged coconspirators "must have reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement."

---

[7] In light of this finding, the Court need not reach Plaintiff's argument that Defendants also qualify as state actors on the second ground that they perform a traditionally public function. *See* Opp. at 13-14.

*Curow-Ray v. City of Tumwater*, No. 09-cv-5633, 2010 WL 3222505, at *13 (W.D. Wash. Aug. 12, 2010). Further, "[b]ecause the conspiracy must be combined with an unlawful purpose, civil conspiracy does not exist independently – its viability hinges on the existence of a cognizable and separate underlying claim." *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020).

Defendants' arguments supporting dismissal of Plaintiff's claims lack merit. First, Defendants contend that Plaintiff's claims fail because "Klein Griffith's other claims are subject to dismissal," such that Plaintiff has no separate claim upon which to premise its conspiracy claims. CLA Mot. at 13; JoLarr Mot. at 4. However, as discussed above, the Court has not found that all of Plaintiff's claims are subject to dismissal. In particular, Plaintiff's Section 1983 claims, like its conspiracy claims, are premised on allegations that it was deprived of proper notice to, and the opportunity to be heard at, the Special Meeting. *See supra* at 12-14. Thus, for example, Plaintiff can potentially premise its conspiracy claims on the unlawful violation of its procedural due process rights. Therefore, Defendants' contention that Plaintiff's conspiracy claims fail for lacking a viable underlying claim is unavailing.

Second, Defendants argue that Plaintiff has not pled with particularity "the who, what, where, when, why, or how of any supposed agreement to conspire against Klein Griffith." CLA Mot. at 13. In making this argument, Defendants incorrectly assume that Plaintiff is required to plead the existence of a conspiratorial agreement with particularity, as for a claim for fraud, pursuant to Rule 9(b) of the Civil Rules of Civil Procedure. Rather, it is only "if the object of the conspiracy is fraudulent" that a plaintiff must comply with Rule 9(b) and plead with particularity. *Kreidler v. Pixler*, No. 06-cv-0697, 2006 WL 3539005, at *10 (W.D. Wash. Dec. 7, 2006) (quoting *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 990-91 (9th Cir. 2006)). Given that

ORDER - 15

Plaintiff's conspiracy claims are not premised on allegations of fraud, Plaintiff must only satisfy the "plausibility" standard set forth in *Twombly* and *Iqbal*.

In all events, the Court finds that Plaintiff adequately alleges a conspiratorial agreement. As discussed above, Plaintiff alleges that JoLarr and CLA worked directly with each other, and with the chairs of the Committee and Subcommittee, to orchestrate a rushed vote to decommit the loan without providing adequate advance notice to Klein Griffith and other Committee members. *See* Compl. ¶¶ 69, 71, 73-74. Indeed, Plaintiff's allegation that at least five Committee members were ultimately absent from the Special Meeting – ensuring that the Committee's hostile chair and three conflicted members would constitute the majority of members present (*see id.* ¶ 83) – suggests that the plot was not only effective, but also coordinated. These allegations make plausible Plaintiff's theory that CLA and JoLarr each reached, with at least one coconspirator, a "unity of purpose or a common design," to wit: to organize the Special Meeting in such a way that would quickly result in the loan commitment's rescission while denying Plaintiff any real opportunity to object. Therefore, the Court will not dismiss Plaintiff's conspiracy claim.

## V. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Complaint (Dkts. 9, 13) are GRANTED in part and DENIED in part. The Court DISMISSES with prejudice Plaintiff's claims for breach of contract, but declines to dismiss Plaintiff's claims for tortious interference, violation of the CPA, violation of constitutional rights under Section 1983, and civil conspiracy.

SO ORDERED.

Dated: December 22, 2022

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 16